UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RESIDENTIAL FUNDING COMPANY, LLC, | Case No. 13-CV-3447 (PJS/JSM) |
| Plaintiff, | |
| v. | ORDER |
| THE MORTGAGE OUTLET, INC., | |
| Defendant. | |
| RESIDENTIAL FUNDING COMPANY, LLC and RESCAP LIQUIDATING TRUST, | Case No. 13-CV-3466 (PJS/JJK) |
| Plaintiffs, | |
| v. | |
| GOLDEN EMPIRE MORTGAGE, INC., | |
| Defendant. | |
| RESIDENTIAL FUNDING COMPANY, LLC, | Case No. 13-CV-3513 (PJS/JSM) |
| Plaintiff, | |
| v. | |
| BRANCH BANKING & TRUST CO., | |
| Defendant. | |
| RESIDENTIAL FUNDING COMPANY, LLC and RESCAP LIQUIDATING TRUST, | Case No. 13-CV-3531 (PJS/TNL) |
| Plaintiffs, | |
| v. | |
| iSERVE RESIDENTIAL LENDING, LLC, as successor to United Residential Lending LLC, | |
| Defendant. | |

David Elsberg and Peter E. Calamari, QUINN EMANUEL URQUHART & SULLIVAN, LLP; Donald G. Heeman, Jessica J. Nelson, and David L. Hashmall, FELHABER LARSON; Jeffrey A. Lipps, CARPENTER LIPPS & LELAND LLP, for plaintiff.

James M. Jorissen, Eldon J. Spencer, Ernest F. Peake, and Patrick J. Lindmark, LEONARD, O'BRIEN, SPENCER, GALE & SAYRE, LTD., for defendant The Mortgage Outlet, Inc.

Philip R. Stein and Shalia M. Sakona, BILZIN SUMBERG BAENA PRICE & AXELROD LLP; Janine W. Kimble and Erin Sindberg Porter, GREENE ESPEL PLLP, for defendant Golden Empire Mortgage, Inc.

William C. Mayberry, Jason D. Evans, and T. Richmond McPherson, III, MCGUIRE WOODS, LLP; Kelly G. Laudon and Mark A. Jacobson, LINDQUIST & VENNUM LLP, for defendant Branch Banking & Trust Co.

Peter L. Loh and Randy D. Gordon, GARDERE WYNNE SEWELL LLP; Erin Sindberg Porter and Jeanette M. Bazis, GREENE ESPEL PLLP, for defendant iServe Residential Lending, LLC.

Before filing for bankruptcy in May 2012, plaintiff Residential Funding Company, LLC ("RFC") was in the business of acquiring and securitizing residential mortgage loans. These lawsuits are just a few of the dozens of lawsuits that RFC has filed against various entities from which it purchased loans. In all of these lawsuits, RFC asserts breach-of-warranty and indemnification claims — alleging, in essence, that the defendants breached representations and warranties regarding the quality of the loans that they sold to RFC.[1]

This matter is before the Court on defendants' motions to dismiss RFC's amended complaints. For the reasons explained below and on the record at the hearing on defendants'

---

[1] Count One of each of RFC's amended complaints is labeled "Breach of Contract" and Count Two is labeled "Indemnification." But because both counts allege that defendants breached their contractual duties in one respect or another, the Court will refer to Count One as "breach of warranty" and Count Two as "indemnity" to distinguish between them. How the claims are labeled in the amended complaint (or referred to by the Court) does not change their substance.

motions, the motions are granted in part and denied in part. Specifically, the motions are granted with respect to RFC's breach-of-warranty claims to the extent that those claims are based on loans that RFC purchased before May 14, 2006. The motions are denied in all other respects.

## I.  BACKGROUND

According to the amended complaints, RFC was in the business of acquiring loans from "correspondent lenders" (such as defendants) and distributing those loans — either by pooling the loans together to sell into residential mortgage-backed securitization ("RMBS") trusts or by selling them to whole-loan purchasers. Over a number of years, RFC purchased over 700 loans from defendant Mortgage Outlet, Inc.; over 240 loans from defendant Golden Empire Mortgage, Inc.; over 350 loans from defendant Branch Banking & Trust Co.; and over 200 loans from defendant iServe Residential Lending, LLC.

RFC required the correspondent lenders to abide by certain contractual representations and warranties designed to protect RFC from the risk that fraud, legal violations, or other factors would reduce the value of the loans. RFC alleges that defendants breached these representations and warranties with respect to many of the loans that they sold to RFC. According to RFC, the delinquency and default rates for those loans exceeded what would be normally be expected, and RFC's internal reviews revealed that a substantial percentage of the loans were defective.

Beginning in 2008, RFC was sued by investors in the RMBS trusts and by the whole-loan purchasers. Those plaintiffs alleged that the loans purchased by RFC and then sold into RMBS trusts or sold to whole-loan purchasers were defective and riddled with fraud and compliance problems. As a result of those lawsuits, RFC and certain of its affiliates filed for bankruptcy on May 14, 2012. At that point, RFC had already repurchased millions of dollars' worth of

allegedly defective loans from the RMBS trusts and from the whole-loan purchasers. RFC eventually resolved its RMBS-related liabilities through a global settlement in the bankruptcy case. That settlement became part of a liquidating Chapter 11 plan, which was confirmed by the bankruptcy court on December 11, 2013. Shortly afterward, RFC filed these lawsuits. A few days later, on December 17, 2013, the ResCap Liquidating Trust succeeded to all of RFC's rights and interests under RFC's contracts with defendants.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as exhibits attached to the complaint, without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). The

court may similarly consider matters of public record.  *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

### B.  Twombly/Iqbal

Defendants first argue that RFC has identified only a few examples of allegedly defective loans in the amended complaints, and even with respect to those loans RFC failed to plead enough facts to enable defendants to identify the loans or understand how defendants allegedly breached their contractual obligations.  As a result, defendants argue, they have no way of knowing which loans or warranties are at issue, and RFC has therefore failed to plead plausible claims under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

As the Court explained in more detail at the hearing on defendants' motions, however, RFC has pleaded enough facts to make out plausible claims that defendants breached their warranties with respect to at least some loans.  Defendants can use the discovery process to force RFC to provide additional information about its claims.  The Court therefore rejects defendants' argument that RFC's claims must be dismissed under *Twombly* and *Iqbal*.

### C.  Statute of Limitations

Defendants next argue that many, if not all, of RFC's claims are time-barred.  The Court considers each of RFC's claims in turn.

1. Breach of Warranty

Under Minnesota law, the statute of limitations for a breach-of-contract claim is six years.[2]  Minn. Stat. § 541.05, subd. 1.  A breach-of-contract claim accrues at the time of breach, whether or not the plaintiff was aware of the breach.  *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989).  Defendants argue that RFC's warranty claims accrued at the time of purchase and that RFC purchased most, if not all, of the loans at issue more than six years before it commenced these actions.  For that reason, defendants argue, most or all of RFC's warranty claims are time-barred.

*a. Claims that Accrued on or after May 14, 2006*

RFC first argues that, at a minimum, all of its claims that accrued on or after May 14, 2006 are timely by virtue of 11 U.S.C. § 108(a).  That statute provides, in relevant part:

> (a) If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of —
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

---

[2] The parties' contracts (portions of which are attached in each case as Exhibit A to the amended complaint) provide that Minnesota law applies.  *See, e.g.*, Case No. 13-CV-3447, Am. Compl. Ex. A ¶ 12.  The Court notes that Golden Empire Mortgage, Inc. has recently alerted the Court to supplemental authority that, it argues, demonstrates that RFC's indemnity claims would be time-barred under New York law.  Case No. 13-CV-3466, ECF No. 71.  It is unclear to the Court why Golden Empire Mortgage, Inc. is making this argument, as New York law does not apply.  *Id.* Am. Compl. Ex. A ¶ 10.

The "order for relief" is the "[t]he commencement of a voluntary case under a chapter of this title . . . ." 11 U.S.C. § 301(b). Because RFC commenced these cases within two years of its May 14, 2012 bankruptcy filing, RFC contends, § 108(a) extended the limitations period for all claims that were still timely as of the date that it filed for bankruptcy — in other words, all claims that accrued on or after May 14, 2006.

The parties dispute whether RFC is entitled to the benefit of § 108(a). Defendants argue that, by its terms, the statute applies only to actions filed by a trustee. RFC responds that, with a few exceptions not applicable here, a debtor-in-possession in a Chapter 11 bankruptcy has "all the rights, . . . and powers, and shall perform all the functions and duties, . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). Defendants reply that the Eighth Circuit has nevertheless indicated that debtors do not have the same rights as trustees under § 108(a). *See Comcast of Ill. X v. Multi-Vision Elecs., Inc.*, 369 Fed. Appx. 761, 763 (8th Cir. 2010) (per curiam) ("Appellant is the debtor in his bankruptcy action, not the trustee. He fails to cite to any support, in the Eighth Circuit or elsewhere, that treats debtors and trustees synonymously for the purposes of § 108(a).").

There is, however, no suggestion in *Comcast* that the debtor in that case was a Chapter 11 debtor-in-possession. Moreover, the Eighth Circuit has acknowledged in other cases that § 1107(a) does indeed give Chapter 11 debtors-in-possession the same rights as trustees. *See Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 278 n.11 (8th Cir. 1983) ("Although the language of § 108 refers only to the trustee, it is generally agreed that the debtor-in-possession is also entitled to the statute's privileges."); *see also In re Hen House Interstate, Inc.*, 177 F.3d 719, 722 n.4 (8th Cir. 1999) ("The express language of § 1107(a) therefore compels the

unremarkable conclusion that Chapter 11 debtors in possession may do most of the things trustees may do.").

In addition, other circuits generally recognize that, under § 1107(a), a debtor-in-possession is entitled to the benefit of § 108(a). *See, e.g.*, *Coliseum Cartage Co. v. Rubbermaid Statesville, Inc.*, 975 F.2d 1022, 1025 (4th Cir. 1992) ("We find no error in the district court's . . . application of § 108(a) to Coliseum as the debtor-in-possession."); *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir. 1987) ("a debtor-in-possession is entitled to § 108's tolling period"); *MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of Hartford*, 286 B.R. 16, 22 (D. Mass. 2002) ("Most courts have held that Section 108 applies to debtors in possession as well as to trustees."). Thus, defendants are mistaken in asserting that only a trustee — and not a debtor-in-possession — may take advantage of § 108(a).

The next question, then, is whether RFC was a debtor-in-possession under Chapter 11 when it commenced these actions. The parties have not briefed this issue, but it appears to the Court that RFC may have lost its debtor-in-possession status when the Chapter 11 plan was confirmed. *See MHI Shipbuilding*, 286 B.R. at 25 ("A debtor in possession generally reverts back to being a mere debtor after the pendency of the bankruptcy proceeding has ended . . . ." (citation and quotations omitted)). According to the allegations in RFC's amended complaints, the bankruptcy court confirmed the Chapter 11 plan on December 11, 2013. RFC filed these actions on December 12, 13, 14, and 15, respectively. As a result, it would appear that RFC was not the debtor-in-possession at the time that it filed these actions.

Some courts have held that " [p]ost-confirmation debtors are not entitled to the tolling provisions of section 108(a) because their interests diverge from those of the creditors of the

bankruptcy estate." *U.S. for Use of Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 260 (5th Cir. 1991); *see also Cunningham*, 824 F.2d at 1460 ("if the reorganization period had ended and Dental Leasing had returned to 'debtor' status, then § 108's protection would not have been available to it"); *Natco Indus., Inc. v. Fed. Ins. Co.*, 69 B.R. 418, 419-20 (S.D.N.Y. 1987) (holding that a post-confirmation debtor was not entitled to invoke § 108(a) because, unlike the trustee or debtor-in-possession, such debtors "are not subject to the control of the bankruptcy court and are not fiduciaries of their creditors").

There is a split of authority on this issue, however. *See generally In re Greater Se. Cmty. Hosp. Corp.*, 333 B.R. 506, 535-38 (Bankr. D.D.C. 2005) (discussing the issue); *Residential Funding Co. v. Embrace Home Loans, Inc.*, Nos. 13-CV-3457, 13-CV-3509, 13-CV-3545 (PAM/FLN), 2014 WL 2766114, at *4 (D. Minn. June 18, 2014) (holding that the relevant inquiry for purposes of applying § 108(a) is whether the plaintiff was entitled to rely on that provision when it declared bankruptcy, not whether the plaintiff was a debtor-in-possession when it later filed suit).

To make matters more complicated, some courts draw distinctions among post-confirmation debtors, finding that whether such a debtor is entitled to invoke § 108(a) depends on the terms of the relevant Chapter 11 plan. *U.S. for Use of Am. Bank*, 944 F.2d at 260 n.11 ("If the reorganization plan or confirmation order places the debtor's recovery under the control of the bankruptcy court, however, we have characterized that debtor as a 'debtor-in-possession' for the purposes of § 108, which means the debtor acts for the benefit of all creditors of the estate and thus benefits from application of § 108(a).").

As noted, the parties have not briefed whether RFC was a debtor-in-possession at the time that it filed these actions. Nor have they briefed whether, if RFC was *not* a debtor-in-possession, RFC is nevertheless entitled to invoke § 108(a). Without help from the parties, the Court cannot rule on this issue. The Court therefore leaves for another day the question of whether the breach-of-warranty claims that accrued on or after May 14, 2006 are barred by the statute of limitations.

### *b. Claims that Accrued before May 14, 2006*

It seems clear that the breach-of-warranty claims that accrued before May 14, 2006 are barred by the statute of limitations. RFC does not make much of an argument to the contrary. It merely suggests that its warranty claims "may still be timely depending on the facts and circumstances of each loan." *See, e.g.*, Case No. 13-CV-3447, ECF No. 40 at 22 n.7. Nowhere in RFC's pleadings or briefs does RFC explain what those "facts and circumstances" might be. Such an argument is plainly insufficient to prevent dismissal of the claims that accrued before May 14, 2006.

RFC argued for the first time at the hearing on defendants' motions to dismiss that defendants had a continuing duty to notify RFC of problems with the loans, and their failure to do so constitutes a continuing breach of their contracts. But this is a different claim than the breach-of-warranty claim that was pleaded in each of the amended complaints. The claim pleaded in each of the amended complaints is a claim that each defendant breached "representations and warranties to RFC regarding the quality and characteristics of the mortgage loans Defendant sold to RFC." *See, e.g.*, Case No. 13-CV-3447, Am. Compl. ¶ 73. In other words, RFC alleged that defendants made affirmative representations to RFC about the quality of

the loans and that those representations were false. The claim raised at oral argument is a claim that each defendant breached a different provision of the contract — a provision that required the defendant to notify RFC if the defendant became aware of problems with a loan.

As noted, the problem with the breach-of-warranty claims that *were* pleaded in the amended complaints is that they are barred by the statute of limitations insofar as they relate to loans acquired before May 14, 2006. The problem with the breach-of-warranty claim raised for the first time at oral argument is that it was raised for the first time at oral argument. RFC did not plead any such claim in its amended complaints and did not brief any such claim in responding to defendants' motions. It is true that, in its amended complaints, RFC cited contractual language imposing a duty on defendants to "promptly notify [RFC] of any occurrence, act, or omission regarding [defendant], the Loan, the Mortgaged Property or the Mortgagor of which [defendant] has knowledge, which . . . may materially affect [defendant], the Loan, the Mortgaged Property or the Mortgagor." *See, e.g.*, Case No. 13-CV-3447, Am. Compl. ¶ 24(b). But nothing in the amended complaints gave defendants fair notice that RFC was making the claim that defendants breached this provision anew each and every day that they failed to notify RFC of a pre-existing problem with a loan.[3]

For these reasons, the Court holds that the breach-of-warranty claims pleaded in the amended complaints are barred by the statute of limitations insofar as those claims relate to loans that RFC acquired before May 14, 2006. *See Residential Funding Co. v. Americash*, No. 13-CV-

---

[3]At oral argument, RFC pointed to paragraphs 19-21 of its amended complaints, but those paragraphs merely allege that (1) a list of the loans is attached to the amended complaint; (2) defendants had the initial responsibility for underwriting the loans; and (3) defendants knew that RFC intended to pool the loans into RMBS trusts. Again, none of this is sufficient to put defendants on notice of RFC's new continuing-breach theory.

3460 (DSD/JJG), 2014 WL 3577312, at *5 (D. Minn. July 21, 2014) (dismissing pre-May 14, 2006 claims in a materially identical complaint for failure to plead the breach of a continuing obligation); *Embrace Home Loans, Inc.*, 2014 WL 2766114, at *3 (same).

2. Indemnity

RFC asserts — and defendants do not dispute — that the six-year statute of limitations that governs its breach-of-warranty claims also governs its indemnity claims. RFC further argues that its contractual right to indemnification did not accrue until December 2013, when the bankruptcy court confirmed the Chapter 11 plan that included the global settlement of the claims of RFC's creditors. *See, e.g.*, Case No. 13-CV-3447, ECF No. 40 at 21 ("With respect to RFC's indemnification claim, the statute of limitations did not begin to run until at the earliest December 17, 2013, the date of Plan confirmation, which included the various settlements of RMBS related liabilities."). According to RFC, because it did not become liable to its creditors until the bankruptcy court confirmed the Chapter 11 plan, RFC's claims to be indemnified for that liability did not accrue — and thus the statute of limitations did not begin to run — until December 2013.[4]

"Under the common law, the right of indemnity does not accrue until the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it." *Metro. Prop. & Cas.*

---

[4]Although RFC states that the limitations period began to run at the *earliest* on December 17, 2013, elsewhere RFC seems to hedge on the date that its indemnity claims accrued. *See, e.g.*, Case No. 13-CV-3447, ECF No. 40 at 22-23 (arguing that its indemnity claims "primarily" accrued sometime during the pendency of the bankruptcy proceeding). Depending on how RFC frames its indemnity claims going forward, the date of accrual could change, which may have implications for defendants' statute-of-limitations defense.

*Ins. Co. v. Metro. Transit Comm'n*, 538 N.W.2d 692, 695 (Minn. 1995) (citation and quotations omitted). *Metropolitan Property* involved a statutory (rather than a contractual) right to indemnity, but the Court sees no reason why the same principle should not apply in this case. As a general matter, "[i]ndemnity . . . arises out of a contractual relationship, either express or implied by law, which requires one party to reimburse the other entirely." *Blomgren v. Marshall Mgmt. Servs., Inc.*, 483 N.W.2d 504, 506 (Minn. Ct. App. 1992) (citation and quotations omitted). Nothing in *Metropolitan Property* indicates that the case turned on the source of the duty to indemnify. To the contrary, *Metropolitan Property* expressly applied a general common-law rule, which in turn is based on principles of contract law.

Defendants argue that the "essence" or "gravamen" of the action determines the applicable statute of limitations, citing *Weavewood, Inc. v. S&P Home Investment, LLC*, 821 N.W.2d 576 (Minn. 2012), and *Portlance v. Golden Valley State Bank*, 405 N.W.2d 240 (Minn. 1987). Because the "gravamen" of this case is breach of contract, defendants argue, the Court should not permit RFC to plead its way around a statute-of-limitations defense.

Neither *Weavewood* nor *Portlance* is particularly relevant to this case. In *Weavewood*, the Minnesota Supreme Court addressed whether declaratory-judgment claims are subject to *any* statute of limitations. *Weavewood*, 821 N.W.2d at 577. In *Portlance*, the Minnesota Supreme Court addressed *which* limitations period should apply to an action for discharge in violation of an employment manual. *Portlance*, 405 N.W.2d at 241. Both of these cases thus addressed questions that are not at issue in this case. Unlike *Weavewood*, there is no dispute here that RFC's indemnity claims are subject to a statute of limitations. And unlike *Portlance*, there is no dispute here about which statute of limitations applies. The question here — a question that

neither *Weavewood* nor *Portlance* answers — is when RFC's indemnity claims accrued. That question is answered by *Metropolitan Property*, which held that the right of indemnity accrues when "the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment or more than a commensurate share of it." *Metro. Prop.*, 538 N.W.2d at 695 (citation and quotations omitted).

Moreover, RFC's indemnity claims appear to be distinguishable from RFC's breach-of-warranty claims. At the pleading stage, it is difficult to identify all of the ways in which the claims are different, but it appears that RFC's indemnity claims will involve different elements of proof and different measures of damages than its breach-of-warranty claims. The Court therefore rejects defendants' argument that RFC's indemnity claims are time-barred.

### D. Remaining Arguments

Defendants raise several other arguments, none of which warrants dismissal of RFC's claims.[5] For example, defendants argue that RFC failed to plead that it complied with all conditions precedent under the contracts. Under Fed. R. Civ. P. 9(c), however, a party may plead generally that all conditions precedent have occurred or been performed, and that is just what RFC did. *See, e.g.*, Case No. 13-CV-3447, Am. Compl. ¶ 35.

Defendants also argue that RFC lacks standing, contending that, under the terms of the purchase agreements pursuant to which RFC sold loans to third parties, RFC assigned its rights under its contracts with defendants. This is not an issue of standing, however, but rather goes to the merits of RFC's claims. *See City of St. Louis v. Dep't of Transp.*, 936 F.2d 1528, 1532 (8th

---

[5]Not every defendant makes every one of these arguments. The Court treats defendants collectively, however, both for ease of discussion and because, as none of the arguments warrants dismissal of any claims, it does not matter which defendant made which argument.

Cir. 1991) ("in the context of standing, it is the nonfrivolous claims of a party that are determinative, not whether the party can sustain those claims by proof on the merits"). The Court does not have before it all of the relevant purchase agreements, and therefore it would be premature to rule on defendants' argument at this time.

Finally, defendants contend that RFC is not the proper plaintiff and that the real party in interest is the ResCap Liquidating Trust, which succeeded to RFC's rights shortly after these actions were filed. *See, e.g.*, Case No. 13-CV-3447, Am. Compl. ¶ 13. Under Fed. R. Civ. P. 25(c), however, "[i]f an interest is transferred, the action may be continued by . . . the original party . . . ." Moreover, following oral argument, two defendants stipulated to adding the ResCap Liquidating Trust as a plaintiff. The transfer of RFC's interest to the ResCap Liquidating Trust therefore does not require dismissal of RFC's claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motions to dismiss [ECF No. 33 in 13-CV-3447; ECF No. 43 in 13-CV-3466; ECF No. 39 in 13-CV-3513; and ECF No. 46 in 13-CV-3531] are GRANTED IN PART and DENIED IN PART.

2. The motions are GRANTED with respect to Count One of plaintiffs' amended complaints insofar as that count is based on loans that plaintiff acquired from defendants before May 14, 2006. All such claims are DISMISSED WITH PREJUDICE.

3. The motions are DENIED in all other respects.

Dated: October 1, 2014                              s/Patrick J. Schiltz
                                                    Patrick J. Schiltz
                                                    United States District Judge